Cite as 2021 Ark. App. 158

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV–20–706

| | |
|---|---|
| KENDRA HARRIS AND JASON HARRIS | **Opinion Delivered:** April 7, 2021 |
| APPELLANTS | APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, FORT SMITH DISTRICT [NO. 66FJV-19-192 ] |
| V. | |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD | HONORABLE SHANNON BLATT, JUDGE |
| APPELLEES | AFFIRMED |

## MIKE MURPHY, Judge

Kendra and Jason Harris appeal the order of the Sebastian County Circuit Court terminating their parental rights to their son, JH. On appeal, they argue that the termination was not in JH's best interest. We affirm.

On May 8, 2019, the Arkansas Department of Human Services (DHS) exercised emergency custody of JH and CW (then ages five and seventeen, respectively) due to Kendra's and Jason's drug use. The children were later adjudicated dependent–neglected, and the parents were provided services by DHS. Thereafter, custody of CW was placed with his grandfather, who had guardianship of him, and the case was closed as it pertained to CW. JH remained in DHS care as the case progressed. In October 2019, the Cherokee Nation intervened because of JH's membership with the tribe. Over the course of the next year, the parents never improved their conditions to a point that DHS or the court considered them safe placements for JH, and on July 2, 2020, DHS filed a petition to

terminate Kendra's and Jason's parental rights to JH.

At the termination hearing on August 10, there was testimony that JH had been in DHS custody for over fifteen months, both parents were testing positive for drugs as recently as May 2020 for Jason and July 2020 for Kendra, Jason had unresolved legal issues, and neither parent had verifiable income. At the conclusion of the hearing, the circuit court terminated Jason's and Kendra's parental rights to JH on the grounds of failure to remedy,[1] subsequent factors,[2] and aggravated circumstances.[3] It found that it was in JH's best interest to terminate the parents' rights after considering JH's adoptability and the potential harm he would suffer if he were returned to their custody. Further, based on the testimony of an Indian Child Welfare Act (ICWA) expert witness, the circuit court found that DHS had made reasonable and active efforts in the case and that JH could suffer serious emotional or physical damage if returned to the parents' custody. Kendra and Jason timely appealed this decision.[4]

We review termination-of-parental-rights cases de novo. *Hune v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 543. At least one statutory ground must exist, in addition to a finding that it is in the child's best interest to terminate parental rights. Ark. Code Ann. § 9-27-341; *Kohlman v. Ark. Dep't of Human Servs.*, 2018 Ark. App. 164, 544 S.W.3d 595.

---

[1]Ark. Code Ann. § 9-27-341(b)(3)(B)(i)*(a)* (Repl. 2020).

[2]Ark. Code Ann. § 9-27-341(b)(3)(B)(vii).

[3]Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)*(a)(3)(A)–(B)(i)*.

[4]The parents submitted separate briefs; however, the issues argued are similar enough that they may be adequately addressed together in this opinion.

2

A best-interest finding under the Arkansas Juvenile Code must include consideration of two factors: the likelihood of adoption and potential harm to the child if returned to the parents' custody. Ark. Code Ann. § 9-27-341(b)(3)(A)(i) & (ii). Potential harm must be viewed in a forward-looking manner and in broad terms, including the harm the child suffers from the lack of stability of a permanent home. *Wallace v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 481, at 12, 470 S.W.3d 286, 293.

According to the ICWA, the party seeking to terminate parental rights shall satisfy the circuit court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful. 25 U.S.C. § 1912(d). Moreover, no termination of parental rights may be ordered in such a proceeding in the absence of a determination, supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent is likely to result in serious emotional or physical damage to the child. 25 U.S.C. § 1912(f). Despite this heightened standard in the circuit court, our court's review is still de novo, and we will not reverse the circuit court's ruling unless its findings are clearly erroneous. *Holmes v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 495, 505 S.W.3d 730. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Sharks v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 435, 502 S.W.3d 569. In determining whether a finding is clearly erroneous, an appellate court gives due deference to the opportunity of the circuit court to judge the credibility of witnesses. *Bryant v. Ark. Dep't of Human Servs.*, 2018 Ark. App. 375, 554

S.W.3d 295.

Jason and Kendra do not challenge the statutory grounds the circuit court relied on to terminate their parental rights; therefore, any challenge relating to the statutory grounds is waived. *Benedict v. Ark. Dep't of Human Servs.*, 96 Ark. App. 395, 409, 242 S.W.3d 305, 316–17 (2006). Nor do they assert that the circuit court clearly erred in finding that continued custody of JH by either parent is likely to result in serious emotional or physical damage to JH. 25 U.S.C. § 1912(f). Instead, the only argument on appeal both parents make is that the circuit court erred when it found that termination of their parental rights was in JH's best interest because it did not consider the effect the termination would have on his relationship with his siblings.

To support their argument, the parents cite *Caldwell v. Arkansas Department of Human Services*, 2010 Ark. App. 102, and *Clark v. Arkansas Department of Human Services*, 2016 Ark. App. 286, 493 S.W.3d 782, for the proposition that a factor a circuit court must consider in making a best-interest determination is the effect on the familial and sibling relationship, and failing to do so is reversible error. We do not read these cases to support that assertion. In fact, this court has held that sibling relationships do not dictate the outcome of termination decisions, especially when there is little to no evidence of a sibling bond. *See, e.g., Brown v. Ark. Dep't of Human Servs.*, 2019 Ark. App. 370, at 10–12, 584 S.W.3d 276, 282–83 ("Keeping siblings together is an important consideration but is not outcome determinative, as the best interest of each child is the polestar consideration . . . . Much more evidence of a genuine sibling bond is required to reverse a best-interest finding based on the severance of a sibling relationship."). Here, both parents concede that there was no

4

testimony presented at the termination hearing involving the sibling relationships.

As mentioned above, a best-interest analysis requires a circuit court to consider two things: the child's adoptability and the potential harm of returning the child to the parents' custody. The parents do not disagree that JH is adoptable. As for potential harm, that analysis is forward-looking and involves a circuit court's viewing the case as a whole and how the parents have discharged their parental duties, the substantial risk of serious harm the parents impose, and whether they are unfit. *Weatherspoon v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 104, at 9, 426 S.W.3d 520, 526. Additionally, failure to comply with court orders and the factual findings from the statutory grounds may support a potential-harm finding. *Black v. Ark. Dep't of Human Servs.*, 2018 Ark. App. 518, at 8–9, 565 S.W.3d 518, 524.

Here, the parents do not dispute that grounds existed to support the termination of their parental rights. By the time of the hearing, JH had been in DHS custody for over fifteen months, yet despite services, they both tested positive for drugs in the two months leading up to the termination hearing. A court may consider past behavior as a predictor of likely potential harm should the child be returned to the parent's care and custody, and continued drug use itself is sufficient to support a circuit court's finding of potential harm. *Furnish v. Ark. Dep't of Human Servs.*, 2017 Ark. App. 511, at 13, 529 S.W.3d 684, 692. After a de novo review, we hold that it was not clearly erroneous for the circuit court to find that termination of Jason's and Kendra's parental rights was in JH's best interest.

Affirmed.

KLAPPENBACH and GRUBER, JJ., agree.

5

*Jennifer Oyler Olson*, Arkansas Commission for Parent Counsel, for separate appellant Kendra Harris.

*Brett D. Watson, Attorney at Law, PLLC*, by: *Brett D. Watson*, for separate appellant Jason Harris.

*Ellen K. Howard*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Dana McClain*, attorney ad litem for minor child, joins brief filed on behalf of appellee Arkansas Department of Human Services.